## APPEAL OF K. B. BIRKELAND.

Docket No. 3464.   Submitted July 1, 1925.   Decided December 21, 1925.

Allowable deductions in computing net income determined.

*K. B. Birkeland* and *C. T. Mortonson, C. P. A.*, for taxpayer.
*Willis D. Nance, Esq.*, for the Commissioner.

### Before MARQUETTE.

This appeal is from the determination of a deficiency in income taxes for the years 1919 to 1921, inclusive, in the amount of $29,-536.59, consisting of 1919, $6,018.27; 1920, $23,516; and 1921, $2.32.

The questions involve the computation of the taxpayer's net in-come for the years 1919, 1920, and 1921.

In determining the net income for 1919, the Commissioner dis-allowed as deductions and added to taxable income:

| | |
|---|---|
| Taxes paid | $202. 09 |
| Depreciation | 2, 036. 68 |
| Aviator well | 1, 812. 05 |
| Other expenses | 15, 575. 30 |
| Investment and loan to Northern Oil & Gas Co | 13, 000. 00 |
| Total | 32, 626. 12 |

In determining the net income for 1920 the Commissioner dis-allowed $30,628.12 for depletion and added to income $48,500 as rent received from K. B. Birkeland Syndicate, making a total addition of $79,128.12.

In determining the net income for 1921 the Commissioner dis-allowed $2,000.16 for depletion.

### FINDINGS OF FACT.

The taxpayer is a resident of Minneapolis, Minn.

During the years 1919, 1920, and 1921, he was engaged in the oil business, and in the course of that business bought and sold oil leases, drilled oil wells on contract for other parties, drilled and

operated oil wells for his own account, invested in stocks, and loaned money.

In 1919 the taxpayer paid taxes as follows:

Personal property taxes_____ $10. 20
Real estate taxes on house and lot in Seattle, Wash_____ 202. 09
Timber taxes on timber located in British Columbia_____ 308. 00

Total_____ 520. 29

In 1919 the taxpayer paid ordinary and necessary business expenses in the total amount of $15,575.30.

In 1919 he sustained a loss of $1,812.05 in the performance of a contract for the drilling of an oil well for the Aviator Oil Co. He received under the contract $22,130 and expended in the work $23,942.05.

The taxpayer acquired a rotary well-drilling rig in 1919, which cost him $10,183.38, and used the same during 1919 in drilling wells for others as well as for himself. A reasonable allowance for the exhaustion, wear and tear of the rotary rig for 1919 is $2,036.68.

On January 22, 1919, the taxpayer signed, as an indorser, a note for $3,000 of the Northern Oil & Gas Co. running to the Mercantile State Bank of Minneapolis. On September 20, 1919, the taxpayer discharged his liability as an indorser by paying $3,000 to the Mercantile State Bank. On November 2, 1919, all of the assets of the Northern Oil & Gas Co. were sold at public sale by the trustee under a mortgage, and thereafter, and within the year 1919, the $3,000 indebtedness was ascertained by the taxpayer to be worthless and was charged off upon his books as uncollectible. The taxpayer owned $5,000 of stock in the Northern Oil & Gas Co.

During 1919 the taxpayer sold a one-half interest in an oil lease covering ten acres for $50,000 par value of Liberty bonds. The whole lease had cost him $15,000. The other half interest previously had been sold for $20,000 in cash. In 1920 the taxpayer sold $51,600 of Liberty bonds for $44,024.78.

During 1920 the taxpayer received from the K. B. Birkeland Syndicate $48,500 in rent. That amount was reported by the taxpayer and included in gross income of $104,253.94 upon his amended return for 1920.

In his return for 1920 he claimed a deduction of $30,628.12, which consisted of an estimated amount for the depletion of oil leases, $2,036.68 for depreciation of the rotary rig and other items representing repairs.

A reasonable allowance for the exhaustion, wear and tear of the rotary rig for each of the years 1920 and 1921 is $2,036.68.

The deficiency should be computed in accordance with the foregoing findings of fact and the following opinion. Final determination will be settled on 7 days' notice, under Rule 50.

## OPINION.

MARQUETTE: The effect of our findings is to sustain the contentions of the taxpayer as to the deductions for 1919, except in one respect. He claimed a loss of $13,000 for an investment in and loans to the Northern Oil & Gas Co. The proof showed a loss only to the extent of $3,000. As to that item, both the note evidencing the liability as indorser and the check by which the taxpayer discharged that liability were introduced in evidence. The taxpayer claimed to have loaned $5,000 more to the corporation and to have invested $5,000 in stock. There was insufficient proof of the loan. Relative to the investment in stock, we note that the taxpayer claimed, and was allowed by the Commissioner in 1920, a loss of $1,250 for investment in stock of the Northern Oil & Gas Co. There was no evidence of the date when the capital loss actually occurred. In his amended return for 1920 the taxpayer claimed bad debt deductions in the amount of $10,750, deductions for losses by fire, storm, and casualty of $3,522.78, and total deductions under "Schedule K" of $14,272.78. The books of account showed bad debts of $1,750, with the inclusion therein of the $1,250 referred to, covering worthless stock in the Northern Oil & Gas Co. In the absence of evidence explaining the partial duplication we can not allow any loss for 1919 by reason of an investment in that stock.

The Commissioner's determination for 1920 was questioned by the taxpayer in two respects. The Commissioner increased income by the amounts of $48,500 for "rent received from K. B. Birkeland Syndicate not reported," and $30,628.12 for "depletion not substantiated." There was error by the Commissioner as to the item first referred to. The taxpayer's gross income for 1920 consisted of:

| | |
|---|---|
| Receipts from oil sales, wells 1 and 2 | $45, 310. 49 |
| Receipts from Birkeland Syndicate | 48, 500. 00 |
| Receipts from gas sales | 920. 99 |
| Receipts from oil sales, Humble lease | 9, 522. 46 |
| Total | 104; 253. 94 |

Therefore, the action by the Commissioner would constitute a duplication of income and the claim of the taxpayer is sustained.

With reference to the depletion deduction, however, we sustain the Commissioner, except to the extent of $2,036.68, which falls

under the same item but constitutes depreciation as distinguished from depletion. The proof in this appeal makes any computation of a depletion deduction utterly impossible. The taxpayer was interested in several leases of oil lands during 1920. He had items of income from sales of oil from at least two of them. His testimony referred to but one. Evidence of production in barrels, as shown by pipe-line vouchers, had reference to a name quite different from anything testified to. But even assuming that those records are correct as to production, nevertheless they are valueless in any determination of a depletion allowance, since there is not a particle of evidence to inform us of the cost of the property or leases, the date of acquisition, and the other essential data. Accordingly, we can not disturb the determination of the Commissioner with reference to that item.

The taxpayer also claimed depletion for 1921 in the amount of $2,000.16. For the same reasons we can not compute any depletion allowance. However, the taxpayer is entitled to a deduction of $2,036.68 for the depreciation of the rotary rig in that year.